## 50971. FEAGIN et al. v. SMITH.

EVANS, Judge.

Vernell Smith, wife of Curtis M. Smith, was admitted as a patient in the Medical Center, a hospital in Columbus, Georgia, for surgery and hospitalization. Upon being asked about health insurance coverage as to the expenses to his wife, Curtis M. Smith replied that he

had health coverage with Blue Cross-Blue Shield, and would be personally responsible for any expenses not covered by that policy. The Smiths had purchased, in addition to the Blue Cross-Blue Shield policy, additional health insurance coverage with Equitable Life Insurance Company. Smith did not disclose to the hospital any information with respect to his additional insurance. Subsequently, the hospital initiated a private investigation, the details of which are unknown, and learned of the Equitable hospital policy. The hospital communicated this information to Blue Cross-Blue Shield, and upon this disclosure, Blue Cross-Blue Shield deducted from its benefits the amount it estimated Equitable would pay, based upon a "coordination of benefits" provision in its policy which would relieve it of its contractual obligation to pay hospital benefits paid by another health insurance company if the other company is "primary." The Equitable policy is considered to be primary because Mrs. Smith had purchased the policy through her employer, whereas Mr. Smith had obtained his insurance policy with Blue Cross-Blue Shield through his previous employer. Smith at no time released any information concerning the Equitable policy to the hospital or to Blue Cross-Blue Shield, and the hospital was not given any authority to investigate his personal affairs and give Blue Cross-Blue Shield this information.

The remaining hospital debt and a doctor's bill for anesthesiology was transferred and assigned to the Credit Bureau of Columbus, a general partnership of several individuals. A suit by these individuals doing business as Credit Bureau of Columbus, was filed against Smith.

Defendant Smith denied owing the indebtedness, denied that he had assigned whatever insurance benefits he owned to the hospital, and added the defense that plaintiff's action would not have arisen if its transferor had followed instructions given to it, as the expenses would clearly have been payable by Blue Cross-Blue Shield. By counterclaim he brought an action for unwarranted intrusion by the transferor into his private affairs. He contended this unauthorized disclosure of matters personal to the defendant thereby caused the expense of defending a lawsuit, mental anguish, and

harm to his impeccable credit rating, and demanded judgment for $5,000.

After lengthy discovery involving interrogatories, request for admissions and affidavits, plaintiff moved for summary judgment based thereon. A hearing was held and the motion was denied and plaintiff appeals. *Held:*

1. Reduced to simple terms, Smith, defendant, incurred certain expense because of his wife's being a patient in Columbus Medical Center, which assigned the account to the Credit Bureau of Columbus, and suit was filed against Smith. Smith filed a counterclaim, the gist of which was that Columbus Medical Center had intruded upon his privacy by revealing to Blue Cross-Blue Shield the fact that Smith had other hospital insurance with Equitable. He alleged that Equitable was also responsible for his expense as above mentioned. Smith's position was that he had full coverage with each insurance company, and that Blue Cross-Blue Shield (whom he had named to the hospital) should have paid out its full coverage and then Smith had the right to collect the full amount of the expense from Equitable.

2. But in contending the hospital had invaded his privacy by revealing to Blue Cross-Blue Shield that he also had insurance with Equitable, he makes a tacit admission that Blue Cross-Blue Shield had the right to pay less than the full coverage, provided there was other coverage. Else, how could this invasion of his privacy injure him?

3. Actually, Smith did not have a contract with Blue Cross-Blue Shield for payment of the full amount of its coverage. The policy payment provision in Blue Cross-Blue Shield was conditioned upon his not having other insurance covering the same expenses. While the language is somewhat technical, the affidavit of Wayne C. Harris, Vice President of Blue Cross (pp. 55, 56), makes this quite plain. The policy itself on page 23 thereof plainly states: "Article XIV — Co-Ordination Of Benefits With Group Coverage. (a) The purpose of this Article *is to coordinate, on a primary-secondary basis, the payment of benefits under this contract with the payment of benefits coverages and the payment of medical and hospital costs under no-fault automobile insurance. . . The term 'Primary*

*Carrier' for purposes of this Article means the corporations unless one or more other organizations are determined to be a primary carrier under any of the following rules, in which case the corporations shall not be the primary carrier."* (Emphasis supplied.) It advises the holder that same contains a "co-ordination of benefits" clause. Again, Sec. 3 thereof (R. p. 61) makes this very specific in the following language: "3. *Claim Form* — The basic claim form (both for Blue Cross and Blue Shield) should provide a space for the provider to indicate the patient's place of employment, as well as 'yes' or 'no' indication of whether the patient has other health benefits coverage. If this is impractical, the plan must obtain the information by other means. See COB information section of revised Supplemental claim form — Exhibit B."

4. Thus, Smith held a policy with Blue Cross-Blue Shield which only obligated it to pay that part of his hospital bill which any other insurance company failed to pay, where coverage for the same benefits existed. He, Smith, was duty and conscience bound to disclose to the Columbus Medical Center *all* insurance policies he held which covered this particular expense. He held back as to Equitable and now complains because Blue Cross-Blue Shield used some other means to discover that he had withheld vital and important information.

5. While this is not a case in equity, an equitable maxim applies, to wit, "one with unclean hands can not obtain relief in equity." *Morgan v. Wright,* 219 Ga. 385, 387 (133 SE2d 341); and "Equity follows the law," *Carter v. Jordan,* 15 Ga. 76. Here, Smith complains because plaintiff learned something which Smith was duty-bound to disclose in the first instance, and without putting plaintiff to the trouble of having to make inquiry of others.

6. The summary judgment claimed by plaintiff should have been granted.

*Judgment reversed. Deen, P. J., and Stolz, J., concur.*

ARGUED SEPTEMBER 8, 1975 — DECIDED OCTOBER 3, 1975.

*Aaron Cohn, Hatcher, Stubbs, Land, Hollis & Rothschild, Howell Hollis, E. H. Polleys,* for appellants.

*Henson, Stapleton & Cheeves, G. David Stapleton, III,* for appellee.